# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## NORTHERN DIVISION

| | |
|---|---|
| **NATALIE FRIEND,** Plaintiff, vs. **AMERICAN NATIONAL AND CASUALTY CO.,** Defendant. | **MEMORANDUM DECISION AND ORDER** Case No. 1:15CV79DAK Judge Dale A. Kimball |

This matter is before the court on Plaintiff Natalie Friend's Motion for Partial Summary Judgment, Defendant American National Property and Casualty Co.'s ("ANPAC") Cross-Motion for Summary Judgment Re: Underinsured Motorist Coverage, and ANPAC's Motion to Strike Affidavit of Paul Brenkman. On June 30, 2016, the court held a hearing on the motions. At the hearing, Friend was represented by James R. Hasenyager and Lani Kate Wallace, and ANPAC was represented by A.J. Sano. The court has carefully considered the materials submitted by the parties, as well as the facts and law relevant to the motion. Now being fully advised, the court issues the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Natalie Friend was injured in an automobile accident on August 7, 2013, while driving a 1988 Ford F-150 truck that she states her father-in-law had given her and her husband a week earlier. The other driver, Brit Howard, was at fault in the accident. State Farm Insurance Company insured Howard for $100,000. And, on March 19, 2015, State Farm offered to pay its

full limit of liability coverage to settle Friend's claims against Howard. On April 10, 2015, Friend made a demand on ANPAC for payment of underinsured motorist ("UIM") coverage under her own policy for $100,000. ANPAC denied the claim, asserting that Friend rejected UIM coverage when she got her policy on February 5, 2001.

On February 5, 2001, when Friend and her husband jointly applied for a new automobile liability insurance policy with ANPAC, ANPAC's application explained that UIM coverage "provides you with additional insurance benefits if you or someone in your automobile suffers bodily injury because of an automobile accident cased by another party who is primarily at fault, but who does not have enough insurance to compensate for the injuries." The application also gave Friend options for purchasing UIM coverage in varying amounts or rejecting UIM coverage in its entirety.

Friend rejected UIM coverage in its entirety by checking a box on the application which stated "I DO NOT desire to purchase UMBI [UIM]." Just below Friend's rejection of UIM, an acknowledgment reads: "I acknowledge that the coverage and options shown in this section have been explained to me and is hereby agreed that selections apply to all insureds under the liability insurance policy and future renewals, replacements and reinstatements of such policy. If I decide to select another option at some future time, I must advise my ANPAC agent of the company in writing before the selection becomes effective." Friend signed the application just below this acknowledgment confirming her rejection of UIM coverage.

At the time of the accident, the Ford truck was insured by Friend's father-in-law through State Farm. The policy included UIM coverage of $15,000 for each person. Friend testified that she was not aware that there was an insurance policy covering the Ford truck. Friend has not made a claim under the State Farm policy covering the truck at the time of the accident.

In 2000, the Utah Legislature amended Utah's insurance code to make the presumptive limits of uninsured motorist and UIM coverage the same as the insured's liability limits, effective January 1, 2001. Therefore, at the time that Friend obtained her insurance in February 2001, Utah's insurance code provision regarding UIM coverage provided:

> (f)(i) A named insured may reject underinsured motorist coverage by an express writing to the insurer that provides liability coverage under Subsection 31A-22-302(1)(a).
>
> (ii) This written rejection shall be on a form provided by the insurer that includes a reasonable explanation of the purpose of underinsured motorist coverage and when it would be applicable.
>
> (iii) This rejection continues for that issuer of the liability coverage until the insured in writing requests underinsured motorist coverage from that liability insurer.

Utah Code Ann. § 31A-22-305(9)(f) (2001).

In 2012, the Utah Legislature amended the UIM statute. The 2012 Amendments combined the rejection and waiver requirements into one subsection and provided, in relevant part:

> (3)(a) For new policies written on or after January 1, 2001, the limits of underinsured motorist coverage shall be equal to the lesser of the limits of the named insured's motor vehicle liability coverage or the maximum underinsured motorist coverage limits available by the insurer under the named insured's motor vehicle policy, unless a named insured rejects or purchases coverage in a lesser amount by signing an acknowledgment form that:
>
> > (i) is filed with the department;
> >
> > (ii) is provided by the insurer;
> >
> > (iii) waives the higher coverage;
> >
> > (iv) reasonably explains the purpose of [UIM] coverage; and
> >
> > (v) discloses the additional premiums required to purchase [UIM]

> coverage with limits equal to the lesser of the limits of the named insured's motor vehicle liability coverage or the maximum [UIM] coverage limits available by the insurer under the named insured's motor vehicle policy.

Utah Code Ann. § 31A-22-305.3(3) (2012). The 2012 Amendments defined the term "new policy" to mean "(i) any policy that is issued which does not include a renewal or reinstatement of an existing policy; or (ii) a change to an existing policy that results in: (A) a named insured being added to or deleted from the policy; or (B) a change in the limits of the named insured's motor vehicle coverage." *Id.* § 31A-22-305.3(3)(b). The 2012 Amendments also made the definition of "new policy" retroactive

> to any claim arising on or after January 1, 2001, for which, as of May 1, 2012, an insured has not made a written demand for arbitration or filed a complaint in a court of competent jurisdiction.
>
> (ii) The Legislature finds that the retroactive application of Subsection (3):
>
> > (A) does not enlarge, eliminate, or destroy vested rights; and
> >
> > (B) clarifies legislative intent.

Utah Code Ann. § 31A-22-305.3(3)(e) (2012).

In 2013, the Utah Legislature again amended the UIM statute. Under the 2013 Amendments, the "reasonable explanation" requirement of Subsection (3)(a)(iv) was clarified to read that the signed acknowledgment form "(iv) need only state in this or similar language that underinsured motorist coverage provides benefits or protection to you and other covered persons for bodily injury resulting from an accident caused by the fault of another party where the other party has insufficient liability insurance." *Id.* § 31A-22-305.3(3)(a)(2014).

Also, whereas only the definition of "new policy" in Subsection (b) had been made

4

retroactive in the 2012 Amendments, the 2013 Amendments read:

> (c)(i) Subsections 3(a) and (b) apply retroactively to any claim arising on or after January 1, 2001, for which, as of May 14, 2013, an insured has not made a written demand for arbitration or filed a complaint in a court of competent jurisdiction.
>
> (ii) The Legislature finds that the retroactive application of Subsection 3(a) and (b) clarifies legislative intent and does not enlarge, eliminate, or destroy vested rights.

*Id.* § 31A-22-305.3(c) (2014).

## DISCUSSION

### Cross Motions for Summary Judgment Regarding UIM Coverage

Friend argues that she is entitled to UIM coverage in the amount of her liability insurance limits because the application form she signed on February 5, 2001, is facially deficient under Utah's UIM statute and fails to constitute a statutorily valid rejection of UIM coverage. The parties agree that Friend's denial of UIM coverage in January 2001 complied with the statutory requirements in place at that time. However, the parties dispute whether the 2013 Amendments to the statute made all the provisions of Utah Code Ann. § 31A-22-305.3(3)(a) and (b) retroactive to new policies issued as of January 1, 2001.

Friend argues that she is entitled to UIM coverage in the same amount as her liability coverage because the UIM denial form she signed in 2001 did not comply with the 2012 Amendments, which she claims the Legislature made retroactive in the 2013 Amendments. It is undisputed that ANPAC did not file her denial form with the Utah Insurance Department, which is one of the requirements the Legislature added in the 2012 Amendments. However, ANPAC argues that the language in the 2013 Amendments making Subsections (3)(a) and (b) retroactive creates conflicts within the statutory requirements, that it is clear that the Legislature's intent was

5

only to make Subsection (3)(a)(iv)'s definition of "reasonably explain" retroactive, and that subsequent statutory requirements have not invalidated Friend's rejection of UIM coverage.

A court generally presumes that the Legislature says what it means and means what it says. *Dodd v. United States*, 545 U.S. 353, 357 (2005). However, ANPAC is correct that the 2013 Amendments create contradictory provisions within the same statute, making it difficult to presume that the Legislature meant what it said. In Utah, courts construe statutes according to their plain language and "read provisions literally, unless such a reading would result in an unreasonable or inoperable result." *State v. Jeffs*, 243 P.3d 1250, 1256 (Utah 2010). When reviewing the plain language of the statute, courts "do not view individual words and subsections in isolation; instead . . . statutory interpretation requires that each part or section be construed in connection with every other part or section so as to produce a harmonious whole." *Summit Operating, LLC v. Utah State Tax Comm'n*, 2012 UT 91, ¶ 11.

Plaintiff's interpretation would effectively invalidate her 2001 rejection of UIM coverage. But this result would be antithetical to the language in the retroactivity provision stating that the retroactive application of Subsection (3)(a) does not "enlarge, eliminate, or destroy vested rights." Utah Code Ann. § 31A-22-305.3(c)(ii) (2014). Similarly incompatible is plain language in the UIM statute, which has been present throughout the duration of Friend's policy, declaring that an insured's rejection "continues for that insurer of the liability coverage until the insured requests, in writing, a change of underinsured motorist coverage from that liability insurer." *See* Utah Code Ann. § 31A-22-305(9)(f)(iii) (2001); *id.* § 31A-22-305.3(3)(b) (2014).

When conflicting provisions of a statute create ambiguity as to how a court should interpret and apply a statute, Utah courts seek guidance from the legislative history. *World Peace Movement v. Newspaper Agency Corp.*, 879 P.2d 253, 259 (Utah 1994). The legislative history

demonstrates that both the 2012 and 2013 amendments to the UIM statute were in response to judicial decisions. The 2012 Amendments defined the term "new policy" and made it retroactive. The 2013 Amendments defined "reasonable explanation." However, in attempting to make the definition retroactive, the Legislature made the entire Subsection (a) retroactive. The legislative history demonstrates that the Legislature was acting only to define "reasonable explanation" and both the legislative history and statutory language in the retroactivity section demonstrate that the Legislature did not intend to make any substantive changes. The Legislature merely intended to clarify the meaning that term "reasonable explanation" had always been intended to have and to leave all existing rights in place.

Friend argues that she was injured in an accident several months after the 2013 Amendments went into effect and ANPAC was, or should have been, well aware of the amendments to the UIM statute and could have notified Friend and had her sign a new waiver to comply with the retroactive amendments to the statute. However, this argument expressly contradicts the provision in the UIM statute, which never changed throughout the duration of Friend's coverage, providing that an insured's rejection "continues for that insurer of the liability coverage until the insured requests, in writing, a change of underinsured motorist coverage from that liability insurer." *See* Utah Code Ann. § 31A-22-305(9)(f)(iii) (2001); *id.* § 31A-22-305.3(3)(b) (2014). Under UIM's statute, ANPAC had no obligation to contact Friend. Rather, Friend had an obligation to contact ANPAC if she wanted to reverse her rejection of UIM coverage.

Friend's argument that ANPAC should have contacted her after the 2013 Amendments became effective actually highlights another missing component to the 2013 Amendments. If the Legislature intended the 2012 and 2013 Amendments to apply to every new policy after 2001 in

7

which an insured had rejected UIM coverage, not only should the Legislature have amended the language above stating that it was the insured's obligation to revisit a rejection of UIM coverage, but it should have also provided some sort of deadline for requiring the insurer to contact the insured about UIM coverage. Nowhere in the 2013 Amendments does it require an insurance company to contact every insured with a policy prior to the amendments. If there was an affirmative requirement to make such notifications, the Legislature would have had to have put in place some kind of timing requirement as well–with the next renewal, within six months, etc. No such duty existed. The fact that the Legislature put no time limits in place further supports ANPAC's position that the Legislature only intended the definition of "reasonable explanation" in the 2013 Amendments to apply retroactively.

While the court recognizes that the UIM statute is "designed for the benefit of the insureds and not insurers," the court must interpret the statute as a whole and avoid absurd results. *General Security Indemnity Co. v. Tipton*, 2007 UT App 109, ¶ 13. It would be an absurd result in this case to find that while the UIM statute provides that once an insured rejects UIM coverage that rejection continues until the insured requests otherwise, Friend is entitled to UIM coverage in the amount of her liability coverage even though she rejected UIM coverage, such rejection was valid when it was made, she never requested otherwise, and she never paid any premium for such coverage.

Subsequently added affirmative statutory requirements cannot legally or logically be applied retroactively to invalidate Friend's valid rejection of UIM coverage. The retroactive provision itself states that the "retroactive application of Subsections (3)(a) and (b) clarifies legislative intent and does not enlarge, eliminate, or destroy vested rights." Utah Code Ann. § 31A-22-305.3(c) (2014). The 2001 policy between Friend and ANPAC is a vested contract right.

Friend's attempt to invalidate her 2001 rejection of UIM coverage fails because to apply the additional affirmative requirements from the 2012 and 2013 Amendments retroactively could very well violate the contract clauses of the United States and Utah Constitutions. *See* U.S. Const. Art. I, § 10 ("No State shall . . . pass any . . . Law impairing the Obligations of Contracts."); Utah Const. Art. I, § 18 ("no . . . law impairing the obligation of contracts shall be passed."). However, the court declines to apply the statute in such a way. As stated above, Friend's interpretation of the 2012 and 2013 UIM Amendments violates established rules of statutory construction and would produce absurd results.

"Laws that enlarge, eliminate, or destroy vested or contractual rights are substantive and are barred from retroactive application absent express legislative intent." *Waddoups v. Noorda*, 2013 UT 64, ¶ 8. In this case, a retroactive application of the affirmative requirements of Subsection (3)(a) would constitute a substantive change to the UIM statute. But such a result would be inconsistent with the plain language of the provision in the 2013 Amendments stating that the amendments did not "enlarge, eliminate, or destroy vested rights."

Constitutional protections prevent retroactive laws from invalidating Friend's 2001 rejection of UIM coverage. *State v. Clark*, 2011 UT 23 n.5. Even where a statute has been expressly declared to be retroactive, that statute is "subject to constitutional proscriptions against ex post facto laws." *Id.* Friend makes no attempt to address the constitutional arguments ANPAC raises.

However, the court rejects Friend's interpretation that she is entitled to UIM coverage as a result of the 2013 Amendment to the UIM statute despite her valid rejection of UIM coverage in 2001. Given the language of the statute as a whole and the legislative history, the court concludes that the only reasonable interpretation of the UIM statute is that only Subsection

3(a)(iv) applies retroactively. Under Utah's UIM statute, Friend's rejection of UIM coverage was valid and remained valid despite the 2012 and 2013 Amendments. Because of this determination, the court declines to address ANPAC's separate argument that Utah law required Friend to exhaust the limits of her father-in-law's coverage on the truck before seeking UIM coverage under her ANPAC policy. Accordingly, the court denies Friend's Motion for Partial Summary Judgment Re: Underinsured Motorist Coverage and grants ANPAC's Cross-Motion for Partial Summary Judgment Re: Underinsured Motorist Coverage.

## ANPAC's Motion to Strike

ANPAC moves to strike Paul Brenkman's Affidavit submitted in support of Friend's Motion for Partial Summary Judgment, arguing that it invades the province of the court in determining questions of law. Friend's motion presents a question of law – the interpretation and application of Utah's UIM statute. Under FRE 702(a) an expert can "help the trier of fact to understand the evidence or to determine a fact in issue." It is well established that an expert's "legal conclusions are inadmissible and of no effect." *American Airlines Inc. v. Platinum World Travel,* 717 F. Supp. 1454, 1456 n.1 (D. Utah 1989). In this case, it is the province of the court to interpret Utah's UIM statute. Whether ANPAC conformed with industry standards is not before the court. To the extent that Brenkman's affidavit seeks to tell the court how to interpret or apply the law, the affidavit is improper. Accordingly, the court grants ANPAC's motion to strike.

## CONCLUSION

Based on the above reasoning, Plaintiff Natalie Friend's Motion for Partial Summary Judgment (Docket No. 17) is DENIED, ANPAC's Cross-Motion for Partial Summary Judgment Re: Underinsured Motorist Coverage (Docket No. 26) is GRANTED, and ANPAC's Motion to

Strike Affidavit of Paul Brenkman (Docket No. 26) is GRANTED. ANPAC stated that it was moving for only partial summary judgment on Friend's UIM coverage claims. It is unclear to the court whether any other claims would survive given the court's ruling that Friend has no UIM coverage under her ANPAC policy. Therefore, the court requests the parties to file a statement within ten (10) days of the date of this Order identifying whether any claims or issues remain to be resolved in this case.

DATED this 28th day of July, 2016.

_____
DALE A. KIMBALL
United States District Judge